Matthias, J.
 

 In the consideration of this case we shall refer to the Safe-Cabinet Company as the plaintiff and to the Grlobe-Wernicke Company as the defendant, they having thus appeared in the trial court.
 

 Some of the questions suggested in the briefs and urged upon the court in oral argument for further consideration were fully determined by this court in the former proceeding (92 Ohio St., 532, 112 N. E., 478), and must be regarded as
 
 *615
 
 adjudicated, and will be referred to only as it is necessary incidentally to do so in the discussion and the decision of the issues before us at this time.
 

 The issue as to the violation of the rights of plaintiff by acts and methods claimed to constitute unfair competition in trade was determined in favor of the plaintiff, and as a result thereof the prayer for an injunction was granted restraining the defendant from continuing such acts, and also requiring an accounting of the gains and profits realized by the defendant, resulting from the acts found by the court to constitute such unfair competition in trade. These, therefore, are no longer open questions in this case. The only questions before us for consideration are those which arose out of the proceedings before the master with reference to the accounting. The first and probably most important question presented is the claimed error upon the part of the master, that he entered a finding against the defendant without evidence that defendant’s cabinets had been sold by any act of unfair competition, charged or found, and that the master refused to receive and consider evidence proffered by the defendant in the way of statements of purchasers of defendant’s safes to the effect that they bought them understanding them to be defendant’s manufacture and that no deception in fact was practiced upon them by the defendant in inducing or procuring such sales. The master based his ruling, first, upon the theory that under the law governing cases of unfair competition the plaintiff is entitled to recover all profits on all sales of infringing ar
 
 *616
 
 tides made by defendant, regardless of a want of showing deception or the misleading of purchasers, and, second, upon the ground that the question was determined by the former decision and order of this court wherein the master was directed to take an account of profits without regard to the manner in which the sales were made, which preduded defendant from further raising the question.
 

 The rule governing the rights of parties and the rule as to the measure of recovery, in cases of infringement of patents and cases of unfair competition, are quite similar, as disclosed in many authorities, among which the following may be cited:
 
 Singer Manufacturing Co.
 
 v.
 
 June Manufacturing Co.,
 
 163 U. S., 169, 16 Sup. Ct., 1002, 41 L. Ed., 118;
 
 Saxlehner
 
 v.
 
 Eisner & Mendelson Co.,
 
 179 U. S., 19, 21 Sup. Ct., 7, 45 L. Ed., 60;
 
 Hamilton Brown Shoe Co.
 
 v.
 
 Wolf Bros. Shoe Co.,
 
 240 U. S., 251, 36 Sup. Ct., 251, 60 L. Ed., 629;
 
 Hanover Star Milling Co.
 
 v.
 
 Metcalf,
 
 240 U. S., 403, 36 Sup. Ct., 357, 60 L. Ed., 713;
 
 Elgin National Watch Co.
 
 v.
 
 Illinois Watch Case Co.,
 
 179 U. S., 665, 21 Sup. Ct., 270, 45 L. Ed., 365. Many other cases have been cited dealing with this proposition, from a consideration of which the rule may be deduced that where the wrong consists of such an infringement of a trade-mark of another, or such an imitation or simulation of the adopted name or the distinctive design, decoration, and appearance of the manufactured article of another, as to result in unfair competition, and the infringement or imitation is shown to be deliberate and willful, the injured party is entitled to recover ail
 
 *617
 
 the profits realized by the offending party upon the manufactured articles in question. The language used by Mr. Justice Pitney, in
 
 Hamilton Brown Shoe Co.
 
 v.
 
 Wolf Bros. Shoe Co., supra,
 
 and also by Chief Justice Puller, in
 
 Elgin National Watch Co.
 
 v.
 
 Illinois Watch Case Co., supra,
 
 is particularly pertinent upon this proposition. By the great weight of authority, particularly where the infringement or imitation was deliberate and willful, it is held that the wrongdoer is required to account for all profits realized by him as a result of his wrongful acts, regardless of any question of deceit or misrepresentation in the actual making of the sale, and the plaintiff in such action is not required to produce evidence of such actual deceit or misrepresentation in the various and sundry sales made. In the case of
 
 Avery & Sons
 
 v.
 
 Meikle & Co.,
 
 85 Ky., 435, at page 446, 3 S. W., 609, 611 (7 Am. St. Rep., 604), the court in disposing of a question similar to that presented in this case said:
 

 “In this case it has been adjudged that the imitation was made with the design on the part of the appellees to make profit by the deception, and we perceive no reason why the appellants should not have the profits, if they claim nothing more. This court cannot now, if so disposed, reconsider the question heretofore determined by requiring the plaintiffs to establish a deception that has already been adjudged to exist. In equity the wrongdoer is treated as a trustee in respect to the property, and is considered as holding the profits for the rightful owner.”
 

 The previous finding of the court in the instant
 
 *618
 
 case was that the imitation by the defendant of the plaintiff’s manufactured - article in question was done with the intention to deceive, and if we were to review that finding at this time it would only be to say that it was amply warranted by the record, for it is there disclosed by the testimony of the president of the defendant company himself that he had purchased one of the safe cabinets manufactured by the plaintiff company and caused it to be shipped to his factory and turned over to the metal-working department, where, in accordance with his directions, it was examined, dissected and used as a basis for designing and manufacturing' the article which he afterwards designated “Cabinet Safe,” although he directed that infringing the plaintiff’s patent should be avoided. However, as a result of such instructions, and with the plaintiff’s article before it, the defendant company manufactured and placed upon the market an article which it labeled “Grlobe Cabinet Safe,” so similar, not only in shape and proportion, but in design and appearance, even to the particular shade of green and the method of ornamentation, to the article long previously manufactured and sold by plaintiff, labeled “The Safe Cabinet,” that at only a few feet distant one could not be distinguished from the other.
 

 Cases in addition to those heretofore cited to the effect that under such circumstances the court will not undertake to apportion the profits gained from the manufacture and sale of such infringed or imitated product are
 
 Benkert
 
 v.
 
 Feder
 
 (C. C.), 34 Fed., 534;
 
 Graham
 
 v.
 
 Plate,
 
 40 Cal.. 593, 6 Am. Rep., 639;
 
 Callaghan
 
 v.
 
 Myers,
 
 128 U. S., 617, 9
 
 *619
 
 Sup. Ct., 177, 32 L. Ed., 547;
 
 Saxlehner
 
 v.
 
 Siegle-Cooper Co.,
 
 179 U. S., 42, 21 Sup. Ct., 16, 45 L. Ed., 77;
 
 Regis
 
 v.
 
 Jaynes,
 
 191 Mass., 245, 77 N. E., 774, and
 
 Lynn Shoe Co.
 
 v.
 
 Auburn-Lynn Shoe Co.,
 
 100 Me., 461, 62 Atl., 499, 4 L. R. A. (N. S.), 960.
 

 The right and remedy of one injured by acts of infringement or unfair competition are thus stated in 26 Euling Case Law, p. 898, Section 78:
 

 £‘Where one’s right of property in a trademark has been violated, he may elect to claim damages, or require the wrongdoer to account for profits; and in case of suit to enjoin the infringement of a trade-mark the court may on a proper showing not only grant an injunction, but also decree an account of the profits made by the defendant resulting from the acts complained of, which is said to be the true criterion of damages in equity. In estimating the wrongdoer’s accountability account should be taken not only of all the profits made by the defendant, but also inquiry should be made in regard to all damages sustained by the plaintiff on account of the defendant’s wrongful acts. The profits recoverable for unfair competition are governed by the same rule, and are not limited to such as accrue from sales in which it is shown that the customer is actually deceived, but include all made on the goods sold in the simulated dress or package, and in violation of the rights of the original proprietor.”
 

 The reasoning and conclusion of the court in the case of
 
 J. F. Rowley Co.
 
 v.
 
 Rowley,
 
 193 Fed., 390, 113 C. C. A., 386, and also in the case of
 
 P. E. Sharpless Co.
 
 v.
 
 Lawrence,
 
 213 Fed., 423, 130 C. C. A., 59, are also to the effect that where the
 
 *620
 
 wrongful act constituting infringement or imitation of the product of another is such as to constitute unfair competition the profits realized therefrom are recoverable by the injured party. As pointed out in a number of the various cases cited, the unfairness consists in the willful and deliberate infringement or imitation, and that determines the nature of the relief to be administered. In such cases a requirement that actual misrepresentation by the defendant in each sale must be shown would be impracticable, and would result in permitting the wrongdoer to appropriate the property of another without rendering an account.
 

 In our opinion, therefore, the master did not commit error in rejecting the evidence proffered by the defendant tending to show that certain purchasers of the articles in question were not misled or deceived.
 

 The language of the former decree of this court in no manner indicates that the method of accounting above referred to is not to be adopted and followed by the master, but rather the contrary. That decree was based upon the acts of unfair competition found by the Court of Appeals, as therein specifically stated, but it required an accounting only as to sales of “metal containers such as that exhibited in plaintiff’s exhibit, defendant’s cabinet,” which included only safes of olive green color, as heretofore described more in detail. It was the manufacture, advertisement, and sale of such safes, which the court found, by reason of the points of similarity above stated, were intended to and did deceive the public. The
 
 *621
 
 unfairness and wrong consisted in the infringe ment or imitation, and the law presumes therefrom the misrepresentation. Hence, an accounting for all sales of such safes should be required. The adoption of a different rule, particularly one requiring that evidence be furnished of actual verbal misrepresentation in each sale, surely would have been indicated in clear and explicit language. It may be observed, too, that the application of the rule above indicated in the proceeding before the master was contemplated by this court by its affirmance of the action of the Court of Appeals, subsequent to the original decree in this case, wherein the defendant was adjudged to be in contempt for continuing the manufacture and sale of said olive green safes.
 

 Should the defendant have been credited with interest upon the portion of its capital employed in the branch of its business devoted to the production of the safes in question? No question of fact is here involved, for the master found that ihe “sum of $30,464.93 is a correct calculation of interest upon such proportion of defendant’s total invested capital, as is represented by the ratio borne by the gross sales of the safes in question to the gross sales of its entire business,” but concluded it would not be a proper item of deduction, and therefore disallowed it. C'oncededly, if the capital employed in the manufacture of these prod uets had been borrowed the interest upon such indebtedness would necessarily be regarded as an item of expense, and consequently considered in determining the net profits of the business. The only objection of any force to the allowance of
 
 *622
 
 such item of deduction is that the defendant is thereby permitted a profit from the transaction; but it seems clear that the results are the same whether the defendant applies to such production money which it would otherwise have invested elsewhere, or goes to a bank and borrows money for the same purpose, for net profits can be ascertained only by deducting the costs of operation, one item of which is interest on the capital actually invested and employed in such production. The profits to be accounted for in such case are not those which might reasonably have been made, but those which were actually realized from the sale of the infringed article. The wrongdoer is not permitted to profit from his own wrong, but actual cost and expense of production and sale should be considered in rendering such account. In determining such profits, interest on capital invested in a business, to the extent of actual employment in the infringing operations, along with other items of expense of production and sale, should be deducted from the gross amount received for such product.
 
 Tremaine
 
 v.
 
 Hitchcock & Co.,
 
 90 U. S. (23 Wall.), 518, 23 L. Ed., 97;
 
 Tilghmam
 
 v.
 
 Proctor,
 
 125 U. S., 136, 8 Sup. Ct.. 894, 31 L. Ed., 664;
 
 C. A. Briggs Co.
 
 v.
 
 National Wafer Co.,
 
 215 Mass., 100, 102 N. E., 87, Ann. Cas., 1914C, 926;
 
 Seabury
 
 v.
 
 Am Ende,
 
 152 U. S., 561, 14 Sup. Ct., 683, 38 L. Ed., 553;
 
 Western Glass Co.
 
 v.
 
 Schmertz Wire Glass Co.,
 
 226 Fed., 730, 141 C. C. A., 486.
 

 We, therefore, agree with the holding of the Court of Appeals that such item should have beeu deducted in ascertaining the net profits. The ex
 
 *623
 
 penses of the plaintiff in the way of accountants * services in the preparation and presentation of its case, and the fees and expenses of the defendant in the patent litigation in New York, were not credited, the first to the plaintiff and the second to the defendant, and such action is approved.
 

 It follows that the finding of the master commissioner, as modified by the Court of Appeals, should be affirmed.
 

 Judgment affirmed.
 

 Robinson, Jones and Day, JJ., concur.
 

 Wanamaker, J., not participating.