(Slip Opinion) OCTOBER TERM, 2019 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ROMAG FASTENERS, INC. *v.* FOSSIL GROUP, INC., FKA FOSSIL, INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 18–1233. Argued January 14, 2020—Decided April 23, 2020

Romag Fasteners, Inc., and Fossil, Inc., signed an agreement to use Romag's fasteners in Fossil's leather goods. Romag eventually discovered that factories in China making Fossil products were using counterfeit Romag fasteners. Romag sued Fossil and certain retailers of Fossil products (collectively, Fossil) for trademark infringement pursuant to 15 U. S. C. §1125(a). Relying on Second Circuit precedent, the district court rejected Romag's request for an award of profits, because the jury, while finding that Fossil had acted callously, rejected Romag's accusation that Fossil had acted willfully.

*Held*: A plaintiff in a trademark infringement suit is not required to show that a defendant willfully infringed the plaintiff's trademark as a precondition to a profits award. The Lanham Act provision governing remedies for trademark violations, §1117(a), makes a showing of willfulness a precondition to a profits award in a suit under §1125(c) for trademark dilution, but §1125(a) has never required such a showing. Reading words into a statute should be avoided, especially when they are included elsewhere in the very same statute. That absence seems all the more telling here, where the Act speaks often, expressly, and with considerable care about mental states. See, *e.g.,* §§1117(b), (c), 1118. Pointing to §1117(a)'s language indicating that a violation under §1125(a) can trigger an award of the defendant's profits "subject to the principles of equity," Fossil argues that equity courts historically required a showing of willfulness before authorizing a profits remedy in trademark disputes. But this suggestion relies on the curious assumption that Congress intended to incorporate a willfulness requirement here obliquely while it prescribed *mens rea* conditions expressly else-

where throughout the Act.  Nor is it likely that Congress meant to direct "principles of equity"—a term more naturally suggesting fundamental rules that apply more systematically across claims and practice areas—to a narrow rule about a profits remedy within trademark law. Even crediting Fossil's assumption, all that can be said with certainty is that Pre-Lanham Act case law supports the ordinary principle that a defendant's mental state is relevant to assigning an appropriate remedy.  The place for reconciling the competing and incommensurable policy goals advanced by the parties is before policymakers.  Pp. 2–7.

Vacated and remanded.

GORSUCH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, GINSBURG, BREYER, ALITO, KAGAN, and KAVANAUGH, JJ., joined.  ALITO, J., filed a concurring opinion, in which BREYER and KAGAN, JJ., joined.  SOTOMAYOR, J., filed an opinion concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 18–1233

---

## ROMAG FASTENERS, INC., PETITIONER *v.* FOSSIL, INC., ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[April 23, 2020]

JUSTICE GORSUCH delivered the opinion of the Court.

When it comes to remedies for trademark infringement, the Lanham Act authorizes many.  A district court may award a winning plaintiff injunctive relief, damages, or the defendant's ill-gotten profits.  Without question, a defendant's state of mind may have a bearing on what relief a plaintiff should receive.  An innocent trademark violator often stands in very different shoes than an intentional one.  But some circuits have gone further.  These courts hold a plaintiff can win a profits remedy, in particular, only after showing the defendant *willfully* infringed its trademark.  The question before us is whether that categorical rule can be reconciled with the statute's plain language.

The question comes to us in a case involving handbag fasteners.  Romag sells magnetic snap fasteners for use in leather goods.  Fossil designs, markets, and distributes a wide range of fashion accessories.  Years ago, the pair signed an agreement allowing Fossil to use Romag's fasteners in Fossil's handbags and other products.  Initially, both sides seemed content with the arrangement.  But in time Romag discovered that the factories Fossil hired in China

to make its products were using counterfeit Romag fasteners—and that Fossil was doing little to guard against the practice. Unable to resolve its concerns amicably, Romag sued. The company alleged that Fossil had infringed its trademark and falsely represented that its fasteners came from Romag. After trial, a jury agreed with Romag, and found that Fossil had acted "in callous disregard" of Romag's rights. At the same time, however, the jury rejected Romag's accusation that Fossil had acted willfully, as that term was defined by the district court.

For our purposes, the last finding is the important one. By way of relief for Fossil's trademark violation, Romag sought (among other things) an order requiring Fossil to hand over the profits it had earned thanks to its trademark violation. But the district court refused this request. The court pointed out that controlling Second Circuit precedent requires a plaintiff seeking a profits award to prove that the defendant's violation was willful. Not all circuits, however, agree with the Second Circuit's rule. We took this case to resolve that dispute over the law's demands. 588 U. S. ___ (2019).

Where does Fossil's proposed willfulness rule come from? The relevant section of the Lanham Act governing remedies for trademark violations, §35, 60 Stat. 439–440, as amended, 15 U. S. C. §1117(a), says this:

> "When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established . . . , the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."

Immediately, this language spells trouble for Fossil and

the circuit precedent on which it relies. The statute does make a showing of willfulness a precondition to a profits award when the plaintiff proceeds under §1125(c). That section, added to the Lanham Act some years after its initial adoption, creates a cause of action for trademark dilution—conduct that lessens the association consumers have with a trademark. But Romag alleged and proved a violation of §1125(a), a provision establishing a cause of action for the false or misleading use of trademarks. And in cases like that, the statutory language has *never* required a showing of willfulness to win a defendant's profits. Yes, the law tells us that a profits award is subject to limitations found in §§1111 and 1114. But no one suggests those cross-referenced sections contain the rule Fossil seeks. Nor does this Court usually read into statutes words that aren't there. It's a temptation we are doubly careful to avoid when Congress has (as here) included the term in question elsewhere in the very same statutory provision.

A wider look at the statute's structure gives us even more reason for pause. The Lanham Act speaks often and expressly about mental states. Section 1117(b) requires courts to treble profits or damages and award attorney's fees when a defendant engages in certain acts *intentionally* and with specified *knowledge*. Section 1117(c) increases the cap on statutory damages from $200,000 to $2,000,000 for certain *willful* violations. Section 1118 permits courts to order the infringing items be destroyed if a plaintiff proves any violation of §1125(a) or a *willful* violation of §1125(c). Section 1114 makes certain *innocent* infringers subject only to injunctions. Elsewhere, the statute specifies certain *mens rea* standards needed to establish liability, before even getting to the question of remedies. See, *e.g.,* §§1125(d)(1)(A)(i), (B)(i) (prohibiting certain conduct only if undertaken with "bad faith intent" and listing nine factors relevant to ascertaining bad faith intent). Without doubt, the Lanham Act exhibits considerable care with *mens rea*

standards.  The absence of any such standard in the provision before us, thus, seems all the more telling.

So how exactly does Fossil seek to conjure a willfulness requirement out of §1117(a)?  Lacking any more obvious statutory hook, the company points to the language indicating that a violation under §1125(a) can trigger an award of the defendant's profits "subject to the principles of equity." In Fossil's telling, equity courts historically required a showing of willfulness before authorizing a profits remedy in trademark disputes.  Admittedly, equity courts didn't require so much in patent infringement cases and other arguably analogous suits.  See, *e.g., Dowagiac Mfg. Co.* v. *Minnesota Moline Plow Co.*, 235 U. S. 641, 644, 650–651 (1915).  But, Fossil says, trademark is different.  There alone, a willfulness requirement was so long and universally recognized that today it rises to the level of a "principle of equity" the Lanham Act carries forward.

It's a curious suggestion.  Fossil's contention that the term "principles of equity" includes a willfulness requirement would not directly contradict the statute's other, express *mens rea* provisions or render them wholly superfluous.  But it would require us to assume that Congress intended to incorporate a willfulness requirement here obliquely while it prescribed *mens rea* conditions expressly elsewhere throughout the Lanham Act.  That might be possible, but on first blush it isn't exactly an obvious construction of the statute.

Nor do matters improve with a second look.  The phrase "principles of equity" doesn't readily bring to mind a substantive rule about *mens rea* from a discrete domain like trademark law.  In the context of this statute, it more naturally suggests fundamental rules that apply more systematically across claims and practice areas.  A principle is a "fundamental truth or doctrine, as of law; a comprehensive rule or doctrine which furnishes a basis or origin for others." Black's Law Dictionary 1417 (3d ed. 1933); Black's Law

Dictionary 1357 (4th ed. 1951). And treatises and handbooks on the "principles of equity" generally contain transsubstantive guidance on broad and fundamental questions about matters like parties, modes of proof, defenses, and remedies. See, *e.g.*, E. Merwin, Principles of Equity and Equity Pleading (1895); J. Indermaur & C. Thwaites, Manual of the Principles of Equity (7th ed. 1913); H. Smith, Practical Exposition of the Principles of Equity (5th ed. 1914); R. Megarry, Snell's Principles of Equity (23d ed. 1947). Our precedent, too, has used the term "principles of equity" to refer to just such transsubstantive topics. See, *e.g., eBay Inc.* v. *MercExchange, L. L. C.*, 547 U. S. 388, 391, 393 (2006); *Holmberg* v. *Armbrecht*, 327 U. S. 392, 395 (1946). Congress itself has elsewhere used "equitable principles" in just this way: An amendment to a different section of the Lanham Act lists "laches, estoppel, and acquiescence" as examples of "equitable principles." 15 U. S. C. §1069. Given all this, it seems a little unlikely Congress meant "principles of equity" to direct us to a narrow rule about a profits remedy within trademark law.

But even if we were to spot Fossil that first essential premise of its argument, the next has problems too. From the record the parties have put before us, it's far from clear whether trademark law historically required a showing of willfulness before allowing a profits remedy. The Trademark Act of 1905—the Lanham Act's statutory predecessor which many earlier cases interpreted and applied—did not mention such a requirement. It's true, as Fossil notes, that some courts proceeding before the 1905 Act, and even some later cases following that Act, did treat willfulness or something like it as a prerequisite for a profits award and rarely authorized profits for purely good-faith infringement. See, *e.g., Horlick's Malted Milk Corp.* v. *Horluck's, Inc.*, 51 F. 2d 357, 359 (WD Wash. 1931) (explaining that the plaintiff "cannot recover defendant's profits unless it has been shown beyond a reasonable doubt that defendant was guilty

of willful fraud in the use of the enjoined trade-name"); see also *Saxlehner* v. *Siegel-Cooper Co.*, 179 U. S. 42, 42–43 (1900) (holding that one defendant "should not be required to account for gains and profits" when it "appear[ed] to have acted in good faith"). But Romag cites other cases that expressly rejected any such rule. See, *e.g., Oakes* v. *Tonsmierre*, 49 F. 447, 453 (CC SD Ala. 1883); see also *Stonebraker* v. *Stonebraker*, 33 Md. 252, 268 (1870); *Lawrence-Williams Co.* v. *Societe Enfants Gombault et Cie*, 52 F. 2d 774, 778 (CA6 1931).

The confusion doesn't end there. Other authorities advanced still different understandings about the relationship between *mens rea* and profits awards in trademark cases. See, *e.g.,* H. Nims, Law of Unfair Competition and Trade-Marks §424 (2d ed. 1917) ("An accounting will not be ordered where the infringing party acted innocently and in ignorance of the plaintiff's rights"); N. Hesseltine, Digest of the Law of Trade-Marks and Unfair Trade 305 (1906) (contrasting a case holding "[n]o account as to profits allowed except as to user after *knowledge* of plaintiff's right to trademark" and one permitting profits "although defendant did not know of infringement" (emphasis added)). And the vast majority of the cases both Romag and Fossil cite simply failed to speak clearly to the issue one way or another. See, *e.g., Hostetter* v. *Vowinkle*, 12 F. Cas. 546, 547 (No. 6,714) (CC Neb. 1871); *Graham* v. *Plate*, 40 Cal. 593, 597–599 (1871); *Hemmeter Cigar Co.* v. *Congress Cigar Co.*, 118 F. 2d 64, 71–72 (CA6 1941).

At the end of it all, the most we can say with certainty is this. *Mens rea* figured as an important consideration in awarding profits in pre-Lanham Act cases. This reflects the ordinary, transsubstantive principle that a defendant's mental state is relevant to assigning an appropriate remedy. That principle arises not only in equity, but across many legal contexts. See, *e.g., Smith* v. *Wade*, 461 U. S. 30, 38–51 (1983) (42 U. S. C. §1983); *Morissette* v. *United*

*States*, 342 U. S. 246, 250–263 (1952) (criminal law); *Wooden-Ware Co.* v. *United States*, 106 U. S. 432, 434–435 (1882) (common law trespass). It's a principle reflected in the Lanham Act's text, too, which permits greater statutory damages for certain willful violations than for other violations. 15 U. S. C. §1117(c). And it is a principle long reflected in equity practice where district courts have often considered a defendant's mental state, among other factors, when exercising their discretion in choosing a fitting remedy. See, *e.g., L. P. Larson, Jr., Co.* v. *Wm. Wrigley, Jr., Co.*, 277 U. S. 97, 99–100 (1928); *Lander* v. *Lujan*, 888 F. 2d 153, 155–156 (CADC 1989); *United States* v. *Klimek*, 952 F. Supp. 1100, 1117 (ED Pa. 1997). Given these traditional principles, we do not doubt that a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate. But acknowledging that much is a far cry from insisting on the inflexible precondition to recovery Fossil advances.

With little to work with in the statute's language, structure, and history, Fossil ultimately rests on an appeal to policy. The company tells us that stouter restraints on profits awards are needed to deter "baseless" trademark suits. Meanwhile, Romag insists that its reading of the statute will promote greater respect for trademarks in the "modern global economy." As these things go, *amici* amplify both sides' policy arguments. Maybe, too, each side has a point. But the place for reconciling competing and incommensurable policy goals like these is before policymakers. This Court's limited role is to read and apply the law those policymakers have ordained, and here our task is clear. The judgment of the court of appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 18–1233

———————

## ROMAG FASTENERS, INC., PETITIONER *v.* FOSSIL, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

[April 23, 2020]

JUSTICE ALITO, with whom JUSTICE BREYER and JUSTICE
KAGAN join, concurring.

We took this case to decide whether willful infringement
is a prerequisite to an award of profits under 15 U. S. C.
§1117(a). The decision below held that willfulness is such
a prerequisite. App. to Pet. for Cert. 32a. That is incorrect.
The relevant authorities, particularly pre-Lanham Act case
law, show that willfulness is a highly important considera-
tion in awarding profits under §1117(a), but not an absolute
precondition. I would so hold and concur on that ground.

# SUPREME COURT OF THE UNITED STATES

_____

No. 18–1233

_____

## ROMAG FASTENERS, INC., PETITIONER *v.* FOSSIL, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

[April 23, 2020]

JUSTICE SOTOMAYOR, concurring in the judgment.

I agree that 15 U. S. C. §1117(a) does not impose a "will-fulness" prerequisite for awarding profits in trademark infringement actions. Courts of equity, however, defined "willfulness" to encompass a range of culpable mental states—including the equivalent of recklessness, but excluding "good faith" or negligence. See 5 McCarthy on Trademarks and Unfair Competition §30:62 (5th ed. 2019) (explaining that "willfulness" ranged from fraudulent and knowing to reckless and indifferent behavior); see also, *e.g., Lawrence-Williams Co.* v. *Societe Enfants Gombault et Cie*, 52 F. 2d 774, 778 (CA6 1931); *Regis* v. *Jaynes*, 191 Mass. 245, 248–249, 77 N. E. 774, 776 (1906).

The majority suggests that courts of equity were just as likely to award profits for such "willful" infringement as they were for "innocent" infringement. *Ante*, at 5–6. But that does not reflect the weight of authority, which indicates that profits were hardly, if ever, awarded for innocent infringement. See, *e.g., Wood* v. *Peffer*, 55 Cal. App. 2d 116, 125 (1942) (explaining that "equity constantly refuses, for want of fraudulent intent, the prayer for an accounting of profits"); *Globe-Wernicke Co.* v. *Safe-Cabinet Co.*, 110 Ohio St. 609, 617, 144 N. E. 711, 713 (1924) ("By the great weight of authority, particularly where the infringement . . . was

deliberate and willful, it is held that the wrongdoer is required to account for all profits realized by him as a result of his wrongful acts"); *Dickey* v. *Mutual Film Corp.*, 186 App. Div. 701, 702, 174 N. Y. S. 784 (1919) (declining to award profits because there was "no proof of any fraudulent intent upon the part of the defendant"); *Standard Cigar Co.* v. *Goldsmith*, 58 Pa. Super. 33, 37 (1914) (reasoning that a defendant "should be compelled to account for . . . profits" where "the infringement complained of was not the result of mistake or ignorance of the plaintiff's right"). Nor would doing so seem to be consistent with longstanding equitable principles which, after all, seek to deprive only wrongdoers of their gains from misconduct. Cf. *Duplate Corp.* v. *Triplex Safety Glass Co.*, 298 U. S. 448, 456–457 (1936). Thus, a district court's award of profits for innocent or good-faith trademark infringement would not be consonant with the "principles of equity" referenced in §1117(a) and reflected in the cases the majority cites. *Ante* at 6–7.

Because the majority is agnostic about awarding profits for both "willful" and innocent infringement as those terms have been understood, I concur in the judgment only.