**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1601**

VARIETY STORES, INC., a Delaware corporation,

Plaintiff - Appellee,

v.

WALMART INC.,

Defendant - Appellant.

**No. 19-1631**

VARIETY STORES, INC., a Delaware corporation,

Plaintiff - Appellant,

v.

WALMART INC.,

Defendant - Appellee.

Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:14-cv-00217-BO)

Argued:  December 9, 2020                    Decided:  March 29, 2021

Before KING, FLOYD, and THACKER, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded with instructions by unpublished opinion. Judge Floyd wrote the opinion, in which Judge Thacker joined and Judge King concurred in the judgment. Judge King filed a separate concurrence.

_____

**ARGUED:** Mark S. Puzella, ORRICK, HERRINGTON & SUTCLIFFE LLP, Boston, Massachusetts, for Appellant/Cross-Appellee. W. Thad Adams, III, SHUMAKER, LOOP & KENDRICK, PLLC, Charlotte, North Carolina, for Appellee/Cross-Appellant. **ON BRIEF:** Mark S. Davies, Hannah Garden-Monheit, Washington, D.C., Elizabeth E. Brenckman, Christopher J. Cariello, Abigail Colella, New York, New York, R. David Hosp, Sheryl Koval Garko, ORRICK, HERRINGTON & SUTCLIFFE LLP, Boston, Massachusetts; William W. Wilkins, Kirsten E. Small, NEXSEN PRUET, LLC, Greenville, South Carolina, for Appellant/Cross-Appellee. Samuel A. Long, Jr., Christina D. Trimmer, SHUMAKER, LOOP & KENDRICK, LLP, Charlotte, North Carolina; Scott P. Shaw, CALL & JENSEN, Newport Beach, California, for Appellee/Cross-Appellant.

_____

Unpublished opinions are not binding precedent in this circuit.

FLOYD, Circuit Judge:

Three years ago, we reversed the district court's grant of summary judgment to Plaintiff-Appellee Variety Stores, Inc. (Variety) in this trademark dispute over use of the term "Backyard" on grills and grilling supplies. *See Variety Stores, Inc. v. Wal-Mart Stores, Inc.* (*Variety I*), 888 F.3d 651 (4th Cir. 2018). The case returns to us again, this time following a trial on liability and a separate trial on damages. Defendant-Appellant Wal-Mart Stores, Inc. (Walmart) appeals the jury verdicts of both trials. After the district court denied both of Walmart's motions for judgment as a matter of law at the liability trial, the jury found that Walmart willfully infringed on Variety's registered and unregistered trademarks by selling grills and grilling products under the name "Backyard Grill." The same jury, recalled 110 days following the liability trial, awarded Variety $95.5 million in reasonable royalties and disgorgement of profits. Because the district court failed to properly instruct the jury on the definition of "willfulness" at the liability trial, we vacate and remand for further proceedings.

I.

As we previously stated, "[t]his trademark dispute concerns whether Walmart's use of the mark 'Backyard Grill' on its grills and grilling supplies infringes on Variety's use of its registered mark, 'The Backyard,' and unregistered marks, 'Backyard' and 'Backyard BBQ,' that it claims it owns." *Variety I*, 888 F.3d at 656. The facts remain largely unchanged from our first review of this case. We briefly recount them.

3

## A.

Variety operates a chain of retail stores selling outdoor products such as lawn and garden equipment, grills, and grilling equipment. In 1997, Variety purchased Rose's Stores, Inc. and thereby acquired the trademark, "The Backyard." The mark was registered for "retail store services in the field of lawn and garden equipment and supplies." J.A. 505. Variety used the mark for those purposes but—over time—began using variations such as "Backyard" and "Backyard BBQ" to sell not only lawn and garden equipment and supplies, but also grills and grilling supplies.

In 2010, enter Walmart. The multinational corporation had previously been selling its grilling products under multiple manufacturer names. To improve branding and reduce costs, Walmart sought to adopt a private label for its grills and grilling supplies. A branding team began generating a list of brand-name ideas, considering names like "Grill Works," "Backyard Barbeque," and "Backyard BBQ." The team conducted customer surveys on these names and "comparison shopped" in the stores of its large competitors to see how companies such as Target, Lowe's, and Home Depot were using their own grill trademarks. The names, however, did not pass muster upon internal legal review due to trademark concerns.

Returning back to the drawing board, the branding team finally decided on "Backyard Grill." Walmart was aware that Variety owned the federal trademark registration for "The Backyard" but correctly believed that Variety used the mark for lawn and garden equipment and supplies. Walmart did not comparison shop at Variety, as it was not considered a competitor. Thus, as then-Senior Director for Grilling Merchandise Karen

4

Dineen testified, "Walmart was not aware of any of Variety's claimed unregistered or 'common law' uses of marks incorporating the word 'backyard' in connection with any products, including lawn and garden products." *Variety I*, 888 F.3d at 657 (citing trial record). Indeed, at the time, "backyard" was "widely used" on grills—not just Variety's, but third-parties' grills as well. J.A. 564.

In late 2011, Walmart began selling grills bearing its customized "Backyard Grill" mark. Walmart filed its trademark application for "Backyard Grill" with the United States Patent and Trademark Office in August 2011. Following publication of Walmart's application in July 2012, Variety opposed the application with the Trademark Trial and Appeal Board. Those proceedings were stayed in 2014, when Variety filed this action in the Eastern District of North Carolina.

B.

In its complaint, Variety claimed trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125, and unfair and deceptive trade practices and trademark infringement under North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA), N.C. Gen. Stat. § 75-1.1; trademark infringement under state law, N.C. Gen. Stat. §§ 80-11, 80-12, 80-13; and common law unfair competition. In 2015, the district court granted partial summary judgment to Variety, holding that "Backyard Grill" created a likelihood of confusion with Variety's various registered and unregistered "Backyard"

5

marks.[1] Walmart removed the "Backyard Grill" logo from new products, maintaining consistency in all other aspects of the packaging. Sales did not change. Armed with this new fact, Walmart appealed.

In 2018, we reversed the district court's grant of partial summary judgment to Variety, concluding that the district court "misapprehend[ded] . . . summary judgment standards," *Variety I*, 888 F.3d at 659, and finding genuine disputes of material fact. We vacated the summary judgment ruling and all subsequent orders. *Id.* at 667.

The district court scheduled a jury trial for October 2018, planning to "try the liability only" and permit interlocutory appeal before proceeding to a trial on remedies. J.A. 486. As part of the liability trial, the parties agreed to try the issue of willfulness on an advisory basis. During trial, Walmart moved for judgment as a matter of law on the issues of both trademark infringement and willfulness. The court denied both motions, and the issues proceeded to the jury. The parties offered competing jury instructions on the proper standard for willfulness. Instead of using either party's proposed instructions, the court simply instructed the jury to "find [whether] defendant Walmart's infringement was willful." J.A. 853. The court did not define "willful" in the trademark context. Though Walmart objected to other components of the jury instructions, it did not place an objection seeking a separate instruction on or definition of willfulness.

---

[1] Variety claims infringement on three marks. The first is "The Backyard," which Walmart stipulates is validly registered for "retail store services in the field of lawn and garden equipment and supplies." J.A. 2335. The other two, "Backyard" and "Backyard BBQ," are unregistered marks which Variety uses on its grills and grilling accessories. We refer to all three marks collectively.

6

The jury found, first, that Walmart infringed on Variety's mark; and, second, that the infringement was willful. The court thanked the jurors for their service and excused them. J.A. 856. It gave jurors no information about being recalled and provided no warnings about discussing the case or seeking additional information about the case.

Months later, the district court decided to schedule a remedies trial without allowing for interlocutory appeal, despite its prior indications to the contrary. Before the remedies trial, Walmart filed a motion in limine to exclude any "evidence or argument that [Variety] is entitled to relief under the UDTPA." J.A. 1104. Walmart argued that because Variety had failed to try the elements of UDTPA liability, the claim was waived and litigating it in the remedies trial could only confuse jurors. Variety argued that the UDTPA claim was essentially the same as the federal law claim, and that—insofar as the claims presented different elements—the district court "reserved [the UDTPA-specific issues] for the second phase of the bifurcated trial." J.A. 1108. The district court granted Walmart's motion in limine and orally denied Variety's motion for reconsideration on the issue.

For the remedies trial, the district court issued a "NOTICE of Hearing: Jury Selection and Jury Trial set for 2/11/19." J.A. 49. But the Friday prior to trial, the court then issued a "Notice to Counsel - The jury trial beginning 2/11/2019 will not include jury selection as the same jurors from [the] liability trial will be used." J.A. 52. Walmart objected, arguing that "[p]rejudice was unavoidable . . . given the jurors' dismissal months prior, the lack of any protective instruction, the near certainty that jurors had discussed the case with others and seen media coverage, and the likelihood that jurors had forgotten key evidence." Opening Br. at 14 (summarizing Walmart's argument to the district court).

7

Walmart relied on the Supreme Court's decision in *Dietz v. Bouldin*, which held that the power to re-empanel a jury "must be carefully circumscribed" and that "even a few minutes" between discharge and re-empanelment could present the potential for juror prejudice. 136 S. Ct. 1885, 1893 (2016); *see also* J.A. 1112. Variety contended that a limited voir dire could determine whether the jury had been prejudiced during the discharge. The court did not heed either of these requests.

At the remedies trial, Walmart and Variety both expressed discomfort with proceeding with the same jurors. Walmart objected, and Variety stated that it had "no objection to simple voir dire . . . to ensure impartiality." J.A. 1408. But in lieu of voir dire, the court merely asked the jurors, collectively, not to "use or rely on anything you've heard outside the court." J.A. 1409. Variety then filed another request for jury voir dire, which the court orally denied the following day:

> [Y]ou're trying to make a mess out of something that I'm trying to make simple. And . . . you don't have any idea what the answers to these [voir dire] questions are going to be, and you're not going to get another trial if you mistry this case by having two or three jurors knocked off the jury.

J.A. 1520–21.

At the remedies trial, Variety did not claim actual damages based on a loss of goodwill or lost sales, so damages were limited to Variety's lost royalty and disgorgement of Walmart's profits. Because the latter remedy sounds in equity, it was to be tried before the jury on an advisory basis. As to the former, Variety's general counsel testified that Variety was "harmed" because it was "deprived of a reasonable royalty for [Walmart's] use" of its mark. J.A. 1418–19. Though Variety had never licensed its "Backyard" mark

8

to anyone, Variety's general counsel testified that based on his own assessment of two books on licensing rates provided by outside counsel, he would have accepted a royalty of 10 percent on Walmart's nationwide "Backyard Grill" sales. Alternatively, Variety's expert stated that he believed a 5 percent rate would be appropriate because "the most common royalty rate is 5 percent." J.A. 1457. By contrast, Walmart presented an expert to show that its profits in the 16 states where Variety had stores was $22,538,837.99—and that this was the largest value Variety could possibly claim in damages. Variety challenged not only that calculation, but the geographical limitation on damages.

The jury ultimately awarded Variety $50 million in disgorged profits on an advisory basis and $45.5 million in royalties—5 percent of Walmart's nationwide sales revenue. The district court adopted the jury's awards, finding that they "properly captured the equitable considerations," and entered judgment for $95.5 million. J.A. 1150–51 (citing *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175–76 (4th Cir. 2006)).

Walmart appealed, arguing that at the liability trial, the district court improperly denied judgment as a matter of law on infringement and willfulness, and also failed to give an instruction defining willfulness. Walmart further argued that for the remedies trial, the jury was improperly recalled and the damages award was incorrect in law and equity. Variety cross-appealed, arguing that the district court improperly granted Walmart's motion in limine to exclude any mention of Variety's UDTPA claim from the remedies trial, which—in effect—dismissed the UDTPA claim. Variety also argued that the district court should have sua sponte granted Variety judgment as a matter of law on its UDTPA claim following the jury's liability finding.

9

II.

A.

We first turn to Walmart's contention that the district court erred in denying its motions for judgment as a matter of law on Variety's federal trademark infringement claim. We review the denial of a motion for judgment as a matter of law de novo, "viewing the facts in the light most favorable to the non-moving party." *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 259 (4th Cir. 2001). In doing so, we give Variety "the benefit of all reasonable inferences without weighing the evidence or assessing the credibility of any witnesses." *Ward v. AutoZoners, LLC*, 958 F.3d 254, 263 (4th Cir. 2020) (citing *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 196 (4th Cir. 2017)).

Judgment as a matter of law should not be granted unless "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998) (alterations in original) (quoting *Cruz v. Loc. Union No. 3 of the IBEW*, 34 F.3d 1148, 1154 (2d Cir. 1994)); *see also Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489–90 (4th Cir. 2005) ("If the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created and a motion for judgment as a matter of law should be denied." (citing *Hofherr v. Dart Indus. Inc.*, 853 F.2d 259, 261–62 (4th Cir. 1988))). This is a high standard indeed, perhaps because judges are loath to improperly place themselves in the role of factfinder. *See Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .").

After two trials, we are back to the same question this Court faced three years ago: whether there are any genuine disputes of fact such that no reasonable jury could find for Variety. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" (quoting *Liberty Lobby*, 477 U.S. at 250–51)). And though we have the benefit of the trial transcripts to further inform our decision making, we arrive at the same conclusion we did three years ago: a reasonable jury could have found for either Walmart or Variety.

We walk through the evidence quickly. To demonstrate federal trademark infringement, Variety must show both "that it owns a valid and protectable mark," and that Walmart's "use of a 'reproduction, counterfeit, copy, or colorable imitation' of that mark creates a likelihood of confusion." *See CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006) (quoting § 1114(1)(a)). Fourth Circuit precedent precluded Walmart's arguments on validity,[2] so Variety need only prove that Walmart's use of the

_____

[2] Walmart "maintains that Variety's federal registration is limited, as a matter of law, to 'retail store services in the field of law and garden equipment and supplies.'" Opening Br. at 24 n.3 (quoting J.A. 505). But, as Walmart acknowledges, our case law barred Walmart from challenging the validity of Variety's unregistered marks. *See Synergistic*, 470 F.3d at 173 ("[T]he PTO's registration of a suggestive mark should be broadly construed.").

mark created a likelihood of confusion. We look to nine factors to determine whether likelihood of confusion exists:

(1)     the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace;
(2)     the similarity of the two marks to consumers;
(3)     the similarity of the goods or services that the marks identify;
(4)     the similarity of the facilities used by the markholders;
(5)     the similarity of advertising used by the markholders;
(6)     the defendant's intent;
(7)     actual confusion;
(8)     the quality of the defendant's product; and
(9)     the sophistication of the consuming public.

*Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 314 (4th Cir. 2017). In *Variety I*, we held that Factor 4 favored Variety. 888 F.3d at 664–65. Walmart does not seem to dispute that Factors 3, 5, and 8 weigh in favor of finding a likelihood of confusion "because the products are nearly identical . . . with similar advertising." *See Grayson O Co.*, 856 F.3d at 314. Nor does Walmart dispute that Factor 9 favors finding a likelihood of confusion. Instead, Walmart argues that Factors 1, 2, 6, and 7 definitively weigh in its favor, and this Court previously noted that no plaintiff "has prevailed in this circuit in that situation." Opening Br. at 23 (citing *Grayson O Co.*, 856 F.3d at 320). But we do not believe Factors 1, 2, 6, and 7 decidedly favor Walmart. We discuss each in turn.


i.

The first factor, "[t]he strength or distinctiveness of Variety's marks," is "paramount in determining the likelihood of confusion since a consumer is unlikely to associate a weak or undistinctive mark with a unique source and consequently will not confuse the allegedly

infringing mark with a senior mark." *Variety I*, 888 F.3d at 661 (cleaned up). A mark can be either conceptually or commercially weak. *See id.* In *Variety I*, we held that "Variety's mark is conceptually weak" because "the term 'backyard' and its variants . . . are widely used in the grilling industry." *Id.* at 663. But in reversing the district court's grant of partial summary judgment to Variety, we held that there was a genuine dispute over the "commercial strength of Variety's marks." *Id.* at 664. In determining commercial strength—whether consumers strongly "associate the mark with a unique source"—we consider "(1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use." *Grayson O Co.*, 856 F.3d at 314, 315 (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990)).

At trial, Variety proffered narrow evidence that the mark has commercial strength. Variety showed continuous use of its mark since 1993 for its entire lawn and garden department. For that department, Variety spent over $40 million in "advertising expenses that . . . were attributable to merchandise and services for Backyard from 1993 to 2012." J.A. 515. And though Variety did not "know the dollar amount of grills and grilling accessories that were sold using the mark The Backyard," J.A. 571, "[f]rom 2002 to 2015 [Variety] sold over $64 million worth of products with The Backyard mark," J.A. 520. Further, Variety received one phone call in 1998 about "licensing . . . or selling [the] registered rights" for the mark, J.A. 1634, but it is unclear whether the license was related to grills or grilling products. And trial testimony suggested that two retailers had sold grills and grilling supplies using names that included the word "Backyard" but discontinued use

13

after Variety sent them cease-and-desist letters—though at least one retailer flatly denied that it was attempting to plagiarize Variety's mark. *See* J.A. 2165 (response to cease and desist letter noting that retailer's "choice of its BACKYARD TRADITIONS mark was in no way focused upon [Variety's] THE BACKYARD mark").

Taken together, we are hesitant to say that the evidence strongly favors Variety, but we believe there is sufficient evidence for a reasonable juror to find commercial strength.

ii.

Turning to Factor 2, the similarity of the marks, we consider whether Variety and Walmart's marks are "sufficiently similar in appearance, with greater weight given to the dominant or salient portions of the marks." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995). In *Variety I*, we examined the marks and held that "reasonable minds may differ on whether they find Walmart's and Variety's marks similar so as to conclude there exists a likelihood of confusion between the two marks." 888 F.3d at 664. With regard to this factor, trial yielded no new evidence: the marks were the exact same as those we weighed in *Variety I*.[3] The marks did have certain similarities: both marks have a "similar linguistic design" because they "feature[] the word 'backyard' followed by another descriptive word." *Id.* Both marks also employ similar color schemes. Certainly, the products also have their differences, but we "need not engage

---

[3] To be sure, our previous finding of a disputed issue is not dispositive post-trial. But reviewing "the record that [was] made" on remand, we see nothing to change our thinking on this point. *See Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 80 (2d Cir. 1997).

14

in a technical dissection" of the marks to find similarity between the two. *See Grayson O Co.*, 856 F.3d at 317. A reasonable jury could find that this factor favors Variety.

iii.

We proceed to Factor 6: intent. "The intent of the defendant is sometimes a major factor in infringement cases." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1532 (4th Cir. 1984). In the context of the likelihood of confusion factors, we ask whether Walmart "intended to capitalize on the good will associated with [Variety's] mark." *CareFirst*, 434 F.3d at 273.

The jury heard that (1) Walmart's legal team advised it not to adopt "Backyard Barbeque" or "Backyard BBQ"; (2) Walmart knew that Variety owned "The Backyard" mark but knew it was registered for lawn and gardening services only; and (3) Walmart did not investigate how Variety was using its mark, likely because Variety was not considered a competitor for which it needed to conduct competitor analysis. Less clear is the testimony of Dineen, who was aware that the legal team had advised against "Backyard BBQ" because a third-party owned the mark. In her deposition, she stated that she had no knowledge of the third-party's identity. At trial, she discussed this in further detail:

> Q. So you did no research at all to determine whether this application for Backyard Barbecue had ever been used?
>
> A. No. Once we got the information that it was being used, we stopped discussing that name and didn't spend any more time on that name. We went a different way.
>
> Q. That could have been by Variety, could it not have?

15

A. Potentially.

. . .

Q. . . . [Y]ou went to see [Target, Home Depot, Lowe's, and maybe some other companies] and you took photographs and you got a lot of information about how they were using—how they were marketing their own barbecue grills, correct?

A. That was for the development of the packaging, not the naming part.

Q. But for the one competitor—you've identified Variety as a competitor in your prior testimony. The one competitor that you knew had a registration for The Backyard for home and garden services, no one as far as you know from Walmart ever went to see what they were actually doing and selling in their department, correct?

A. Correct.

J.A. 699–700.

Variety argues one can infer intent from this testimony. We agree that a reasonable juror could so find, even if we may not reach the same conclusion. To be sure, we do not necessarily find bad faith based on "knowledge of the earlier mark" alone, *Star Indus., Inc. v. Barcardi & Co.*, 412 F.3d 373, 388 (2d Cir. 2005), but "[b]ad faith may be inferred from [Walmart's] actual or constructive knowledge of [Variety's] mark," *id.* at 389. Viewed in the light most favorable to Variety, the evidence shows that Walmart was aware of Variety's "The Backyard" mark, knew that some third-party owned the "Backyard BBQ" mark, and failed to further investigate either usage. It was the jury's prerogative to infer bad faith from that evidence, so we will not disturb that finding here.

16

iv.

Factor 7, actual confusion, is the "most important factor" and "can be demonstrated by both anecdotal and survey evidence." *George & Co. v. Imagination Ent. Ltd.*, 575 F.3d 383, 398 (4th Cir. 2009) (citing *Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.*, 87 F.3d 654, 661 (4th Cir. 1996)). However, it is also "well established that no actual confusion is required to prove a case of trademark infringement." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 263 (4th Cir. 2007). At summary judgment, "Variety did not produce any evidence of actual confusion," but Walmart "attempted to affirmatively prove *the absence of* actual confusion by submitting consumer surveys." *Variety I*, 888 F.3d at 666. Variety did not change its tactics at trial and put on experts to discredit Walmart's surveys, rather than putting on its own experts.

On appeal, Walmart argues that Variety's failure to show actual confusion over a substantial period of time "weighs heavily" in favor of finding noninfringement. Opening Br. at 33 (quoting *CareFirst*, 434 F.3d at 269, 274). But in making this argument, Walmart asks us to ignore the testimony of Variety's experts—something we cannot do when viewing all evidence and drawing all inferences in favor of Variety. At trial, Variety's experts identified flaws in Walmart's surveying techniques. And Variety's experts further testified that even with these flaws, Walmart's survey showed not a lack of confusion, but rather 11 percent confusion. Therefore, the expert testimony could have undermined the jury's faith in Walmart's surveys, or led it to believe there was evidence—albeit minimal—of actual confusion.

It is true that "the absence of any evidence of actual confusion over a substantial period of time . . . creates a strong inference that there is no likelihood of confusion." *CareFirst*, 434 F.3d at 269. But because "[t]he absence of [actual confusion] proof does not preclude a party from proving a likelihood of confusion based on a compilation of other evidence," Variety's failure to affirmatively show actual confusion is not dispositive to our inquiry. *See Super Duper, Inc. v. Mattel, Inc.*, 382 F. App'x 308, 313 (4th Cir. 2010) (per curiam).

\*     \*     \*

Combining this evidence together, we believe it would be enough for a reasonable jury to find that Walmart infringed on Variety's mark. This is not to say that we would find for Variety on every factor—or at all—if we were sitting in the jury box. But "[n]ot all [likelihood of confusion] factors will be relevant in every trademark dispute, and there is no need for each factor to support [Variety's] position on the likelihood of confusion issue." *Synergistic*, 470 F.3d at 171. For these reasons, we are compelled to affirm the district court's denial of judgment as a matter of law on trademark infringement.[4]

---

[4] Variety argued, and the jury was instructed, that "this case involves both forward confusion and reverse confusion." J.A. 882. This Circuit has not yet analyzed a reverse-confusion claim, but because we believe there is sufficient evidence to deny judgment as a matter of law on the forward-confusion theory, we need not wade into the evidence presented as to reverse confusion.

Walmart next claims that the district court should have granted it judgment as a matter of law on the issue of willfulness. In the alternative, Walmart argues that the district court erred in not providing the jury with a definition of willfulness in the trademark context.

i.

Before evaluating each of Walmart's claims, we provide a brief background on the role of willfulness in trademark infringement claims and this case in particular. Importantly, plaintiffs alleging trademark infringement need not show that the defendant willfully infringed to succeed on their claims. *See Synergistic*, 470 F.3d at 175. But "[w]ithout question, a defendant's state of mind may have a bearing on what relief a plaintiff should receive. An innocent trademark violator often stands in very different shoes than an intentional one." *Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1494 (2020). Circuit courts previously debated whether a plaintiff was required to show willfulness to be entitled to certain additional remedies—namely, ill-gotten profits. *See id.* at 1494. Last year, the Supreme Court held that willfulness is not a prerequisite for an award of profits in infringement cases. *See id.* at 1497; *see also id.* at 1497 (Alito, J., concurring) ("The relevant authorities . . . show that willfulness is a highly important consideration in awarding profits under § 1117(a), but not an absolute precondition."). As such, a finding of willfulness, though potentially a driver of the amount of damages, does not determine the availability of certain remedies.

Here, Variety alleged that Walmart's infringement on its mark was willful. The parties agreed to try the issue of willfulness on an advisory basis.[5] After Walmart's motion for judgment as a matter of law on willfulness failed, the question was set to proceed to the jury. Both parties submitted their proposed jury instructions; notably, each provided a separate instruction with a definition of willfulness. The court rejected any separate instructions on willfulness but asked two questions on the verdict form: (1) did Walmart infringe on Variety's mark and, if so, (2) was the infringement willful? Because the jury answered both questions in the affirmative, the subsequent remedies trial—using the same jury as the liability trial—proceeded with the understanding that Walmart's infringement was willful. *E.g.*, J.A. 1568 ("And you're also aware the jury's already found in this case that Walmart's trademark infringement was willful, correct?"); J.A. 1588 ("When infringement is found to be willful, the district court should give extra scrutiny . . . ."). The

---

[5] We understand that the parties originally agreed to try the issue of willfulness on an "advisory" basis, but the instruction did not have an advisory effect in reality. "To bind the district court's equitable powers, a jury's findings must be on an issue 'common' to the action's legal and equitable claims; otherwise, the court is free to treat the jury's findings as 'merely advisory' under Federal Rule of Civil Procedure 39(c)." *Sturgis Motorcycle Rally, Inc. v. Rushmore Photos & Gifts, Inc.*, 908 F.3d 313, 343–44 (8th Cir. 2018) (quoting *Smith Flooring, Inc. v. Pa. Lumbermens Mut. Ins.*, 713 F.3d 933, 938–39 (8th Cir. 2013)). But "[i]n an action tried on the facts . . . with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a). The district do not so here. *See* J.A. 1151 (reviewing the damages award but clearly stating that "[a]t the liability phase of the proceedings, the jury found that Walmart had willfully infringed Variety's trademark rights"). Because the parties and district court treat the jury's findings as binding, we do so here as well. *Cf. Schwartz v. Rent A Wreck of Am., Inc.*, 468 F. App'x 238, 247 (4th Cir. 2012) (addressing the parties' judgment-as-a-matter-of-law arguments where the district court failed to treat the jury's findings as advisory, "adjudicated the parties' Rule 50(b) motions . . . [and] held that there was a legally sufficient evidentiary basis for the jury's verdict").

district court did not tell the jury how willfulness should factor into its damages verdict. Nor is it clear from the verdict form whether willfulness did, in fact, play into the jury's reasonable royalty and profits awards, though the district court cited to Walmart's willfulness in its equitable evaluation of the jury's damages award. *See* J.A. 1151 ("Based on the evidence at the liability trial, the jury concluded that there had been willful infringement. While the jury did not specifically conclude that there was an intent to confuse, the finding of willful infringement clearly weighs in Variety's favor and suggests that a monetary award is appropriate.").

ii.

Against that backdrop, we consider Walmart's claim that the district court erred in denying judgment as a matter of law on the issue of willfulness. Walmart argues that Variety failed to present sufficient evidence that Walmart selected and used its "Backyard Grill" mark with an intent to deceive consumers and trade off Variety's goodwill.

We accept Walmart's argument that infringement must be more than "merely volitional" to be willful. *See Ga.-Pac. Consumer Prods. LP v. Von Drehle Corp.*, 781 F.3d 710, 719 (4th Cir. 2015) ("'[W]illful' does not mean that the defendant's actions were merely volitional, but rather that the defendant acted *with the intent to infringe* the plaintiff's protected mark."). The correct inquiry is "whether there has been a willful infringement on the trademark rights of the plaintiff, or whether the defendant has acted in bad faith." *Synergistic*, 470 F.3d at 175; *see also* Restatement (Third) of Unfair Competition § 37(1)(a) (Am. L. Inst. 1995) (describing willfulness as "engag[ing] in the

21

[infringing] conduct with the intention of causing confusion or deception"); *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1161 (10th Cir. 2013) (defining willfulness as "intent to benefit from the goodwill or reputation of the trademark holder" (quoting *W. Diversified Servs. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1274 (10th Cir. 2005))); *4 Pillar Dynasty LLC v. N.Y. & Co.*, 933 F.3d 202, 210 (2d Cir. 2019) (defining willfulness as conduct involving "reckless disregard . . . or willful blindness" (alteration in original) (quoting *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005))).

Though different legal inquiries, Variety can—and did—use similar evidence to prove both "defendant's intent" under the likelihood-of-confusion analysis and "willfulness." And we agree with Variety that a reasonable juror could, by inference, determine that Walmart knew of a third-party owner of the "Backyard BBQ" mark, that the owner could be Variety, and that Walmart consciously chose not to further investigate Variety's usage of the mark. Such conduct might amount to willful blindness and signify bad faith. Though we would not necessarily draw such inferences, a reasonable juror could. We therefore affirm the district court's denial of a motion for judgment as a matter of law on willfulness.

iii.

Regardless of whether judgment as a matter of law was appropriate, the issue of willfulness must be retried, as the district court failed to properly instruct the jury on the matter. Because Walmart failed to preserve any objection to the instruction, we review the

22

issue of the district court's willfulness instruction "only for plain error." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 912 F.3d 731, 738 (4th Cir. 2019).

"A party may assign as error . . . a failure to give an instruction, if that party properly requested it and—unless the court rejected the request in a definitive ruling on the record— also properly objected." Fed. R. Civ. P. 51(d)(1). Walmart did not object to the jury instruction. True, both Walmart and Variety proposed jury instructions that defined willfulness. But "the mere tendering of a proposed instruction will not preserve error for appeal." *Oberg*, 912 F.3d at 737 (quoting *Bunn v. Oldendorff Carriers GMBH & Co. KG*, 723 F.3d 454, 469 (4th Cir. 2013). Nor is there any evidence that the district court rejected a request in a definitive ruling. "[W]here a litigant proposes an instruction and the district court's final ruling on the record demonstrates that the court rejected it on the merits, the claim of error is preserved." *Id.* But here, the district court's failure to give the proposed instruction is not enough because "we cannot discern from the record whether the court considered [the] proposed instructions and rejected them for their substance, or simply believed that its own instructions were an adequate substitute." *Id.* at 738. Indeed, "[t]o preserve the issue, [Walmart] could have sought clarification as to the court's basis for rejecting [its] instructions, or . . . timely objected." *See id.* Because Walmart failed to do so,[6] we review only for plain error.

---

[6] Walmart argues that it objected to the lack of a willfulness instruction. But Walmart actually objected to something much narrower: as to whether there should be an instruction "that continuing use after notification does not constitute intent." J.A. 840 ("[Variety's Attorney]: I think it would be better, your Honor to give the jury a separate issue on willfulness, but however your Honor wants to do it. . . . [Walmart's Attorney]:

Under the plain error standard of review, we reverse for failure to give proposed instructions if "(1) there is an error; (2) the error is plain; (3) the error affects substantial rights; and (4) the court determines . . . that the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Gregg v. Ham*, 678 F.3d 333, 338 (4th Cir. 2012) (alteration in original) (quoting *In re Celotex Corp.*, 124 F.3d 619, 630–31 (4th Cir. 1997)). We believe Walmart has met this admittedly heavy burden given the district court's failure to instruct the jury on the meaning of "willfulness."

We first ask if the district court's failure to provide a definition of willfulness "caus[ed] the jury to act in complete ignorance of, or to have misapplied, fundamentally controlling legal principles to the inevitable prejudice of an aggrieved party." *See Spell v. McDaniel*, 824 F.2d 1380, 1399 (4th Cir. 1987). "'Willful' is a word of many meanings whose construction is often dependent on the context in which it appears." *RSM, Inc. v. Herbert*, 466 F.3d 316, 320 (4th Cir. 2006) (cleaned up); *see also Romag Fasteners*, 140 S. Ct. at 1498 (Sotomayor, J., concurring) ("Courts of equity . . . defined 'willfulness' to encompass a range of culpable mental states—including the equivalent of recklessness, but excluding 'good faith' or negligence." (citing 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:62 (5th ed. 2019))). Indeed, it would be easy for

---

Your Honor, just for the record, we do object to the instruction on validity, and we believe that there should be an instruction that continuing use after notification does not constitute intent, but those are the only objections for the record."); *see also* J.A. 431 ("Walmart requests . . . that the Court issue an instruction to the jury on the issue of intent or willfulness that Walmart's continued use of its BACKYARD GRILL + Design trademark after it received notice of Variety's claims does not constitute bad faith or an intent to confuse and deceive.").

a layperson to erroneously believe that willfulness merely requires that Walmart's actions were volitional. *Compare Willful*, Random House College Dictionary (rev. ed. 1980) (defining willful as "deliberate, voluntary, or intentional" and listing "volitional" as first synonym), *with Ga.-Pac. Consumer Prods.*, 781 F.3d at 719 (holding that willfulness cannot mean that the conduct was "merely volitional, but rather that the defendant acted *with the intent to infringe*").

Without a sufficient understanding of the legal definition of "willfulness" in the trademark context, we believe the jury "act[ed] in complete ignorance of . . . fundamentally controlling legal principles." *Spell*, 824 F.2d at 1399; *Worldwide Network Servs., LLC v. Dyncorp Int'l, LLC*, 365 F. App'x 432, 447–48 (4th Cir. 2010) (finding error with jury instructions where district court failed to define term with distinct ordinary and legal meanings); 9C Charles Alan Wright et al., *Federal Practice & Procedure* § 2556 (3d ed. Oct. 2020 Update) (noting that district courts "should define" any "technical or obscure legal phrases"). And the jury's unmoored finding necessarily prejudiced Walmart and seriously affected the fairness of the subsequent remedies trial. We accordingly vacate the jury's willfulness finding and all subsequent findings predicated upon it.[7]

---

[7] Given this holding, any discussion of Walmart's additional claims—that the jury was improperly reassembled after a 110-day break between the liability and remedies trials, that the lost royalty damagers were improper, and that the court abused its discretion in adopting the damages award—would be merely advisory. Though we fear such claims may return once again to this Court, we do not consider them in this opinion.

C.

On cross-appeal, Variety argues that the district court erroneously granted Walmart's motion in limine to exclude all references to Variety's UDTPA claim from the remedies trial. In the alternative, Variety argues that the district court should have, sua sponte, granted Variety judgment as a matter of law on its UDTPA claim. Decisions on motions in limine are reviewable only for abuse of discretion. *Malone v. Microdyne Corp.*, 26 F.3d 471, 480 (4th Cir. 1994). However, whether Variety abandoned its UDTPA claim is "'a primarily factual finding' . . . review[ed] for clear error." *AirFacts, Inc. v. De Amezaga*, 909 F.3d 84, 91 (4th Cir. 2018) (quoting *Ellis v. United Airlines, Inc.*, 73 F.3d 999, 1003 (10th Cir. 1996), *overruled on other grounds by Smith v. City of Jackson*, 544 U.S. 228 (2005)). Because we conclude that the district court correctly determined that Variety waived its UDTPA claim, we see no abuse of discretion here.

Recall, Variety's complaint pleaded a UDTPA claim, which Variety also discussed in proposed pretrial orders and trial briefs. But Variety did not try the UDTPA claim at the liability trial. Variety made no arguments about the UDTPA in opening and closing statements and—perhaps because of its failure to do so—Walmart did not raise the issue. Neither Variety's proposed jury instructions nor its verdict form referenced the UDTPA, and Variety did not object when the UDTPA was not mentioned in the actual jury instructions or verdict form. Finally, the UDTPA was absent from Variety's post-trial motions.

Before the remedies trial, Walmart filed a motion in limine requesting that the court exclude any reference to the UDTPA. Walmart—correctly—argued that Variety's failure

to try the elements of UDTPA liability constituted waiver of the claim and that litigating the claim in the remedies trial could only confuse jurors. The district court granted the motion in limine, ruling that the claim "ha[d] necessarily been waived," and "[a]ny evidence at this stage on a UDTPA claim would be both irrelevant and prejudicial." J.A. 1132–33 (noting that Variety had not "present[ed] any evidence on its UDTPA claim" or "include[d] the UDTPA claim in its proposed jury instructions or verdict form").[8] Notably, Variety did not mention its UDTPA claim in post-remedies-trial motions. Nor did Variety claim the jury had found for it on any UDTPA claim, seek UDTPA monetary remedies, or ask for judgment as a matter of law on its UDTPA claim.

Variety now claims the district court's motion-in-limine ruling was in error, and that its waiver was not an "*intentional* relinquishment or abandonment of a known right." Resp. Br. at 66 (quoting *Wood v. Crane Co.*, 764 F.3d 316, 326 n.9 (4th Cir. 2014)). But Variety's waiver, though not express, is clear and unambiguous. *See AirFacts*, 909 F.3d at 91–92

---

[8] Variety told the district court that it did not try the UDTPA claim because the district court had limited the liability trial to the sole issue of likelihood of confusion. We do not share Variety's reading of the record. Before trial, and after Variety had proposed jury instructions and a verdict form without a UDTPA claim, Walmart's counsel sought to clarify whether the issue of causation—an element unique to Variety's UDTPA claim— would be included in the trial. *See* Transcript of Jury Trial Day 1 at 49: 2–4, *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 359 F. Supp. 3d 315 (E.D.N.C. 2019) (No. 489) ("I only ask whether causation is in this trial or not. If it's not, it's not. I understand you have said that damage[s] are not."). Though the district court did not specifically answer this question, Variety did not seek to clarify it. The district court, however, was clear about what would not be included in the "liability" trial: damages. *See* J.A. 486 ("I'm going to bifurcate [the damages issue] and we'll try the liability only here. It's wasteful any way you cut it to try damages . . . ."). Under this guidance, it seems evident that all issues except damages were to be included in the liability trial—including the UDTPA claim.

("To determine whether acts constitute clear and unambiguous abandonment, we weigh several commonsense factors: whether the party failed to advance the claim on appeal, failed to argue that the district court erred in not addressing it, or otherwise represented that it did not intend to pursue the claim."). "[E]ven though a party's complaint contains certain claims, he will waive those claims if he fails to object to their exclusion from the jury instructions." *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443 (7th Cir. 1996); *see also Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 281 (5th Cir. 1998) (noting that the plaintiff waived a claim when he "failed to object to the jury instruction that omitted the civil conspiracy claim under Texas law").

Variety argues that it was not required to have separate jury instructions on its UDTPA claim, given the jury's federal trademark infringement verdict. Resp. Br. at 64 (citing *Elliott v. Am. States Ins.*, 883 F.3d 384, 396 (4th Cir. 2018) ("The determination of whether an act or practice is an unfair or deceptive practice . . . is a question of law for the court." (alteration in original))). The success of Variety's argument hinges on whether UDTPA and Lanham Act liability are identical, which they are not. *See Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 805 (4th Cir. 2001) ("[T]o read the [UDTPA] to create per se liability for violations of federal law would expand its scope beyond the apparent intent of the North Carolina legislature."). Particularly, to prevail on its UDTPA claim, Variety must prove that Walmart's unfair or deceptive conduct proximately caused Variety's actual injury. *See Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 164 (4th Cir. 2012); *see also* N.C. Pattern Jury Instructions for Civil Cases § 813.70 (pattern proximate cause instruction in trade practice cases). Variety did not make, or attempt to make, such a

showing. Thus, Variety's failure to propose jury instructions or a verdict form discussing UDTPA liability constitutes waiver.

For these reasons, we believe the district court correctly determined that Variety waived its UDTPA claim, and we affirm its grant of Walmart's motion in limine.[9]

III.

Though hesitant to overturn the hard work of a jury, the law obliges us to do so here. We therefore affirm the district court's denial of Walmart's motions for judgment as a matter of law, vacate the jury's finding of willfulness and all other findings predicated upon it, affirm the district court's grant of Walmart's motion in limine regarding Variety's UDTPA claim, and remand to the district court for further proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART, AND*
*REMANDED WITH INSTRUCTIONS*

---

[9] Variety alternatively argues that we should remand with instructions to the district court to enter judgment as a matter of law in Variety's favor on the UDTPA claim based on the jury's federal trademark infringement verdict. We decline to do so in light of our holding that Variety waived that claim at trial.

KING, Circuit Judge, concurring:

I am pleased to concur in nearly all of our opinion disposing of this case. I write separately, however, to explain how I would reach the same result and that I concur in the judgment. Put succinctly, I do so because Walmart's objection concerning the willfulness instruction was properly preserved, it was erroneously not given, and that error was prejudicial to Walmart. Walmart made the district court aware of its position in multiple ways: by tendering a proposed willfulness instruction, *see* J.A. 413; by moving prior to the charge conference for a supplemental instruction on willfulness and intent, *id.* at 428; by advising the trial court that it objected to the lack of an instruction "that continuing use after notification does not constitute intent," *id.* at 840; and by advising the court at the charge conference that it maintained its objections concerning instructions previously filed, *id.* In any event, our Court has recognized that "where the district court was fully aware of the plaintiff's position, and the district court had obviously considered and rejected that position, strict enforcement of Rule 51 would exalt form over substance." *See City of Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 453 (4th Cir.1990) (internal quotation marks omitted). Accordingly, I concur in nearly all of our opinion and in the judgment, but I would not get there by way of plain error review.