Affirmed by published opinion. Judge GREGORY wrote the opinion, in which Judge AGEE and Judge DIAZ joined. Judge AGEE wrote a separate concurring opinion.
GREGORY, Circuit Judge:
In 2001, Freeman began conducting background checks on its job applicants, *465 which the Equal Employment Opportunity Commission (“EEOC”) alleges had an unlawful disparate impact on black and male job applicants. The district court granted summary judgment to Freeman after excluding the EEOC’s expert testimony as unreliable under Federal Rule of Evidence 702. Without this testimony, the district court found the agency failed to establish a prima facie case of discrimination. For the reasons below, we affirm the district court’s exclusion of the EEOC’s expert testimony and grant of summary judgment to Freeman.
I.
Freeman is a provider of integrated services for expositions, conventions, and corporate events, with offices in major cities throughout the United States. In 2001, the company commenced background checks of job applicants’ credit and criminal justice histories. Criminal background checks were required for all applicants, and credit history checks for “credit sensitive” positions involving money handling or access to sensitive financial information. Freeman’s credit and criminal background check policies excluded applicants whose histories revealed certain prohibited criteria. If an applicant’s history included one of the listed criteria, like a conviction for a crime of violence, the applicant was not hired.[1] Freeman modified these criteria on July 20, 2006, and again on August 11, 2011, after which it no longer conducted-credit checks.
In 2008, after an applicant who was denied a position filed a charge of discrimination, the EEOC began an investigation of Freeman’s credit check policy. On September 25, 2008, it notified Freeman it was expanding this investigation to the criminal background check policy. On March 27, 2009, the EEOC issued a letter of determination finding Freeman’s use of credit and criminal checks violated Title VII.
After conciliation failed, the EEOC filed suit under Sections 706 and 707 of Title VII.[2] .42 U.S.C. §§ 2000e-5, 2000e-6. It alleged Freeman’s criminal checks had a disparate impact on black and male job applicants,[3] and that the credit checks had a disparate impact on black job applicants. The district court subsequently limited the class of applicants on behalf of which the EEOC could seek relief to those individuals affected by criminal checks from November 30, 2007 to July 12, 2012, and those affected by credit checks from March 23, 2007 to August 11, 2011.
The case proceeded to discovery. The EEOC produced a report by Kevin Murphy, an industrial/organizational psychologist, and one by Beth Huebner, an associate professor of criminology, which *466 purported to replicate Murphy’s results. Then, eight days after its expert disclosure deadline, the EEOC produced an amended report from Murphy with slightly altered calculations. Freeman moved to exclude Murphy’s and Hueb-ner’s reports and also moved for summary judgment. In response to Freeman’s motion to exclude, the EEOC filed a new declaration and supplemental report from Murphy, with revised calculations and the results from his analysis of a new, expanded database. The EEOC also moved to file a sur-reply, and while that motion was pending, served Freeman yet another supplemental expert report from Murphy, as well as a supplemental report by Huebner, which the agency sought to introduce at the summary judgment hearing on June 19, 2013.
The district court denied the EEOC’s motion for leave to file a sur-reply and granted Freeman’s motion to exclude Murphy’s testimony on the basis that it was “rife with analytical errors” and “completely unreliable” under Federal Rule of Evidence 702. The court granted Freeman’s motion for summary judgment. The EEOC timely appealed.
II.
Federal Rule of Evidence 702 governs the admissibility of expert evidence. Expert testimony under Rule 702 is admissible if it “rests on a reliable foundation and is relevant.” Westberry v. Gis-laved Gummi AB, 178 F.3d 257, 260 (4th Cir.1999) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). In determining reliability, a district court exercises a special gatekeeping obligation. See Kumho, 526 U.S. at 147, 119 S.Ct. 1167. It possesses “broad latitude” to take into account any “factors bearing on validity that the court finds to be useful.”[4] Westberry, 178 F.3d at 261. The scope of the court’s gatekeeping inquiry will depend upon the particular expert testimony and facts of the case. See Kumho, 526 U.S. at 150,119 S.Ct. 1167.
We review a district court’s decision to admit or to exclude expert evidence for an abuse of discretion. See Westberry, 178 F.3d at 261. A district court abuses its discretion if. it relies on an error of law or a clearly erroneous factual finding. See id. We reverse the district court only if we have “a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.” Id. (quoting Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 506 (4th Cir.1977)).
A.
The district court identified an alarming number of errors and analytical fallacies in Murphy’s reports, making it impossible to rely on any of his conclusions. Freeman provided the EEOC with complete background check logs for hundreds, if not thousands, of applicants who Murphy did not include in his database of fewer than 2,014 background checks conducted largely before October 14, 2008. J.A. 1061. Only 19 post-October 14, 2008 applicants were included in Murphy’s data *467 base, all but one of whom .failed the checks. J.A. 1063. However, Freeman, through its background check vendor, “conducted more than 1,500 criminal background investigations and more than 300 credit investigations on applicants between October 15, 2008 to August 31, 2011” with Freeman producing in discovery “race and gender information for hundreds of these applicants.” J.A. 461-62. Murphy furthermore omitted data from half of Freeman’s branch offices. This is despite the fact that he did not seek to utilize a sample size from the relevant time period, but purported to analyze all background checks with verified outcomes.
Most troubling, the district court found a “mind-boggling” number of errors and unexplained discrepancies in Murphy’s database. For example, looking at a subset of 41 individuals for whom the EEOC is seeking back pay, 29 had at least one error or omission. Seven were missing from the database altogether. Seven were listed in the database without a race code, “one was incorrectly coded as passing the criminal background check, two were incorrectly coded as failing the criminal background check, one ha[d] an incorrect race code, five ha[d] incorrect gender codes, nine [we]re listed twice and double-counted in Murphy’s results, and three who failed the credit check [we]re not coded with a credit check result.” J.A. 1064. The' EEOC claims these errors were present in the original data, a contention dispelled by comparing the information from the discovery materials to Murphy’s database. It was in fact Murphy who introduced these errors into his own analysis.[5]
The EEOC also contends that Murphy fixed any errors in his analysis in subsequently-filed, supplemental reports. The district court examined a third report by Murphy[6] and found that he did not make certain corrections to his database, despite claims of doing so. Contrary to his assertions, Murphy did not change “incorrect coding of race and pass/fail status for several individuals.” J.A. 1065. The district court also found that Murphy “managed to introduce fresh errors into his new analysis,” like double-counting applicants who had failed their background checks.[7] Id. And Murphy’s new, expanded database still omitted hundreds of applicants for whom Freeman produced complete information in discovery.
The sheer number of mistakes and omissions in Murphy’s analysis renders it “outside the range where experts might reasonably differ.” Kumho, 526 U.S. at 153, 119 S.Ct. 1167. We therefore cannot say the district court abused its discretion in *468 ultimately excluding Murphy’s expert testimony as unreliable.
III.
We affirm the district court’s grant of summary judgment[8] to Freeman solely on the basis that the district court did not abuse its discretion in excluding EEOC’s expert reports as unreliable under Rule 702. We decline to consider whether the district court erred in limiting the time period in which the EEOC could seek relief, as any error in this regard was inconsequential in light of Murphy’s pervasive errors and utterly unreliable analysis. We decline to reach any other issues in the district court’s opinion.

AFFIRMED.

.Freeman required a form authorizing a background search to be completed with each job application, which, according to a company handbook, Freeman thought would “deter individuals with negative information from applying.” However, the checks were not conducted until after a conditional offer of employment had been made. It appears most criteria, as well as making false statements on the job application, led to automatic disqualification. But, Freeman usually gave applicants a reasonable amount of time to resolve outstanding arrest warrants before rescinding an offer.

. The Office of Personnel Management intervened in the case to protect the confidentiality of information related to federal government background investigations, which Freeman sought.

. The EEOC’s complaint originally alleged the checks also had a disparate impact on Hispanics. After its expert found no statistically significant effect on Hispanic applicants, the parties jointly dismissed the EEOC’s claim that the criminal checks discriminated against this class.

. These factors may include “whether the reasoning or methodology underlying the expert's opinion has been or could be tested; whether the reasoning or methodology has been subject to peer review and publication; the known or potential rate of error; and the level of acceptance of the reasoning or methodology by the relevant professional community.” Westberry, 178 F.3d at 261 n. 1 (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 593-94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

. Although Murphy contends that any errors in the data were in the discovery materials from Freeman, we do not discern any clear 'error by the district court in making this factual finding.

. The EEOC proffered a fourth report by Murphy at the summary judgment hearing, but did not attach it to the agency's earlier motion to file a sur-reply. The district court also found the EEOC never properly offered Huebner's supplemental report. The court declined to allow the EEOC to file a surreply, and we therefore find that neither Murphy’s fourth report nor Huebner’s supplemental report are part of the record.

. The district court also held that Murphy’s third and fourth reports were not proper supplements under Federal Rule of Civil Procedure 26(e), but were "poorly disguised attempts to counter Defendant's arguments with new expert analyses.” We agree that EEOC cannot use Rule 26(e) as a “loophole ... [to] revise [its] disclosures in light of [Freeman’s] challenges to the analysis and conclusions therein.” Luke v. Family Care & Urgent Med. Clinics, 323 Fed.Appx. 496, 500 (9th Cir.2009).

. We emphasize that by our disposition we express no opinion on the merits of the EEOC’s claims.