**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1935

MOUNTAIN VALLEY PIPELINE, LLC,

        Plaintiff - Appellee,

v.

0.32 ACRES OF LAND, OWNED BY GRACE MINOR TERRY, Roanoke County Tax Map Parcel No. 102.00-01-01.02-0000 and Being MVP Parcel No. VA-RO-5149 (AR RO-279.01),

        Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Elizabeth K. Dillon, Chief U.S. District Judge.  (7:21–cv–00099–EKD)

Argued:  October 31, 2024                Decided:  January 27, 2025

Before GREGORY, WYNN, and HARRIS, Circuit Judges.

Vacated in part, reversed in part, and remanded by published opinion. Judge Wynn wrote the opinion, in which Judge Gregory and Judge Harris joined.

**ARGUED:**  Joseph Very Sherman, POOLE BROOKE PLUMLEE PC, Virginia Beach, Virginia, for Appellant.  Wade Wallihan Massie, PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Appellee.  **ON BRIEF:**  Seth M. Land, PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Appellee.

WYNN, Circuit Judge:

Mountain Valley Pipeline ("MVP") needed an access road to deliver heavy equipment to a section of its pipeline in southwestern Virginia. Acting under federal law, MVP condemned a 0.32-acre access easement on the northwest corner of Grace Terry's land, near the summit of Poor Mountain. This taking was proper; the only remaining issue is how much MVP must pay Terry in just compensation. Terry appeals the district court's exclusion of two pieces of evidence she offered on that issue.

First, Terry sought to testify at trial that the access easement significantly devalued her land. In support, she contended that the access easement now blocked the best hiking trail on her property, and noted that her neighbors recently sold their properties at below-market rates after MVP condemned portions of their property. However, the district court prohibited Terry from testifying as to damages, finding that Terry's opinion had "no basis" and was "inadmissible." *Mountain Valley Pipeline, LLC v. 0.32 Acres of Land Owned by Terry*, No. 7:21-cv-99, 2022 WL 4091860, at *8 (W.D. Va. Sept. 7, 2022). We hold that Terry's factual bases qualified her to testify as a lay opinion witness, so we vacate the district court's entry of summary judgment and reverse the exclusion of some of Terry's testimony.

Second, Terry submitted an expert report on the issue of just compensation. The district court, believing that it possessed increased discretion to exclude expert evidence in eminent domain cases, applied a heightened admissibility standard and determined contested facts at the evidentiary stage. It then excluded the expert report and granted MVP summary judgment. But in *Mountain Valley Pipeline, LLC v. 9.89 Acres*, No. 23-2129, slip

2

op. (4th Cir. Jan. 27, 2025), also issued today, we hold that courts should apply the standard rules of evidence to expert testimony in eminent domain proceedings. We therefore vacate the exclusion of Terry's expert report and remand for further proceedings.

## I.

Grace Terry owns more than 500 acres[1] of unimproved land on top of Poor Mountain, Virginia (the "Terry Parcel"). In 2007, she voluntarily deeded a conservation easement over the entirety of her parcel to the Virginia Outdoors Foundation (the "conservation easement"). The conservation easement prohibits subdivision, limits construction to only one homesite, and restricts the location of that homesite.

Honeysuckle Road, a public thoroughfare, cuts through Terry's land. It sees little traffic as it leads only to a gated police communications tower. An old logging road, impassable by car, branches off Honeysuckle Road through the northwest corner of the parcel toward the top of the mountain.

In October 2017, MVP initiated a condemnation action against Terry under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, for a 0.32-acre access road easement (the "access easement") along the old logging road.[2] MVP intends to use the easement to bring heavy equipment to the pipeline, which does not itself traverse the Terry Parcel. The access easement will be at most thirty feet wide temporarily during the road's construction (for a

---

[1] According to Terry's expert, the parcel is approximately 558 acres. MVP's expert measured the parcel at 590 acres.

[2] MVP settled separately with the Virginia Outdoors Foundation.

3

total of 0.085 acres of temporary-only easement), and at most twenty feet wide permanently (for a total of 0.235 acres).

In early 2018, the district court granted MVP partial summary judgment and a preliminary injunction granting immediate possession of the access easement. *See Mountain Valley Pipeline, LLC v. Easements to Construct, Operate & Maintain a Nat. Gas Pipeline over Tracts of Land in Giles Cnty.*, No. 7:17-cv-492, 2018 WL 648376 (W.D. Va. Jan. 31, 2018) (granting partial summary judgment); *Mountain Valley Pipeline, LLC v. Easements to Construct, Operate & Maintain*, No. 7:17-cv-492 (W.D. Va. Mar. 7, 2018), ECF No. 613 (order granting immediate possession). We affirmed the summary-judgment decision, *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197 (4th Cir. 2019), and the Supreme Court denied certiorari, *Givens v. Mountain Valley Pipeline, LLC*, 140 S. Ct. 300 (2019). The remaining issue was the amount MVP must pay Terry in just compensation. Terry introduced multiple pieces of evidence on the matter of just compensation, two of which are at issue in this appeal.[3]

First, Terry sought to testify that the access road diminished the value of her land by $333,000, or approximately one-third of what she asserted was its $1,000,000 pre-taking value. During a deposition, Terry stated from her own knowledge of the property that the access easement is situated on the old logging road, which provides hiking access to an important overlook. She also stated that her opinion on damages was informed by the value of two recent sales of nearby properties encumbered by pipeline easements ("Sale One"

---

[3] Terry also submitted expert reports by Linda DeVito and Larry Florin, but she does not appeal their exclusion.

4

and "Sale Two"). The property conveyed in Sale One was purchased after MVP filed its condemnation complaint but before MVP was granted possession of the easement. The property at issue in Sale Two, purchased by the same buyer in Sale One, was conveyed after MVP had taken possession of its easement. Terry finally considered an expert appraisal performed on her land when the conservation easement was deeded in 2007, which calculated that the conservation easement devalued her property by 30%. Terry argued that the access easement would devalue her property by an equal percentage because it also eliminated some uses of the property.

Second, Terry submitted an expert appraisal by Dennis Gruelle (the "Gruelle Report"). In calculating the pre-taking value of the land, Gruelle factored in the preexisting impact of the conservation easement and determined that the highest and best use of the land—i.e., the use by which the court should measure its market value—was for premium single-family residence with a home constructed on the northwest corner of the property. Gruelle further concluded that, after the taking, the property would no longer be suitable for premium residential use. The access easement runs through the northwest corner of the Terry Parcel, which is the area that Gruelle recommended for a homesite. According to Gruelle, "[t]he best portions of the property featured privacy, views, and natural settings[,] and all three desirable features are lost due to the project." J.A. 118. Gruelle posited that discerning buyers seeking premium residential acreage would no longer be interested in the property. As a result, he determined that the Terry Parcel was now only suitable for recreational uses such as hunting.

5

To place a dollar value on diminution in value caused by the access easement, Gruelle used the sales comparison approach. To establish the pre-taking value, he collected data on the sales of four nearby properties suitable for single-family residential use, and calculated the pre-taking value as $865,000. To determine the post-taking value, he collected three sales of nearby properties suitable for recreational use. He then compared the sales prices of the pre-taking and post-taking sales and concluded that the access road devalued the Terry Parcel by $305,000, or about 35%.

In response, MVP submitted an expert report by Samuel Long, who used the sales comparison approach to estimate a before-taking value of $973,500 and an after-taking value of $963,419, meaning he set Terry's damages for the permanent easement at only $10,081, or about 1%.[4] MVP also submitted a rebuttal report which alleged several shortcomings in the Gruelle Report.

MVP moved to exclude Terry's testimony and the Gruelle Report. After a hearing, the district court excluded Terry's testimony as to damages. It found that Sales One and Two were not a reliable basis for Terry's opinion because it found that the buyers didn't have knowledge of the easements, and the properties were ultimately encumbered by a pipeline easement rather than an access easement. The court also found that Terry stated no rational basis for her opinion that the conservation easement and the access easement damaged the property equally. The court permitted Terry to testify as to pre-taking value.

---

[4] Long calculated Terry's total damages as $10,114, after adding in $33 as compensation for the temporary easement.

6

The court also excluded the Gruelle Report under Federal Rule of Evidence 702. Just as it did in *9.89 Acres*, No. 23-2129, slip op. at 7, the district court reasoned that Federal Rule of Civil Procedure 71.1(h)—which instructs courts to "tr[y] all issues" other than (in some cases) that of just compensation—means that "[t]he gatekeeping role of the district court is particularly pronounced in condemnation proceedings under Rule 71.1." *0.32 Acres of Land*, 2022 WL 4091860, at *4 (quoting *United States v. 33.92356 Acres of Land*, 585 F.3d 1, 8 (1st Cir. 2009)). Applying this heightened evidentiary rule to the Gruelle Report, the court found the report defective for failing to consider the impact of Honeysuckle Road and the old logging road; relying on incomparable sales; considering the effects of takings on other properties; and incorrectly assuming that the entire width of MVP's temporary easement was permanent.

Although it excluded all of Terry's evidence as to post-taking value, the court denied MVP summary judgment in part because it concluded that an issue of fact existed as to the *pre*-taking value of the Terry Parcel. MVP subsequently stipulated to Terry's own pre-taking valuation of the parcel ($1 million). It then again moved for summary judgment, asking the court to apply its expert's damage calculation of 1% to the stipulated pre-taking value. The court agreed and granted summary judgment, resulting in a just compensation award of $10,409.[5]

---

[5] This number includes the damage done to the land the easement sits on ($358), damage done to the rest of Terry's property (1% x $999,642 = $9,996), and five years of rent on the temporary easement ($55).

## II.

We review evidentiary determinations for an abuse of discretion. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). "A district court abuses its discretion if its conclusion is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Id.* (citation omitted).

## A.

The district court abused its discretion by preventing Terry, the landowner, from testifying as to damages.

The threshold for admissibility of landowner testimony in takings cases is low. "Courts indulge a common-law presumption that a property owner is competent to testify on the value of his own property." *Christopher Phelps & Assocs. v. Galloway*, 492 F.3d 532, 542 (4th Cir. 2007). Landowner testimony is generally admitted as lay opinion testimony under Rule 701 and is sometimes justified by the landowner's special knowledge of their land.[6] *See id.*; *United States v. Sowards*, 370 F.2d 87, 92 (10th Cir. 1966). However, "[t]o be admissible, a landowner's valuation opinion must rely on a valid foundation, not speculation or conjecture." *Mountain Valley Pipeline, LLC v. 0.47 Acres of Land*, 853 F. App'x 812, 815 (4th Cir. 2021) (per curiam). *Compare Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cnty.*, Nos. 1:16-cv-93, 1:16-cv-95, 2019 WL 10375615, at *8 (N.D. Fla. Jan. 22, 2019) (admitting testimony from landowner who complained about

---

[6] Under Rule 701, lay opinion testimony is admissible if it is rationally based on the perception of the witness, helpful to a clear understanding of his testimony or the determination of a fact in issue, and not Rule 702 expert testimony. Fed. R. Evid. 701.

8

disruption and loss of privacy from easement, where testimony went beyond "simply pull[ing] a figure out of thin air with no basis whatsoever" even though it was a "close question" whether bases were sufficient to support damages calculation), *aff'd*, 824 F. App'x 621 (11th Cir. 2020), *with Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1251 (11th Cir. 2018) (noting "general rule that homeowners may testify as to the value of their homes" but excluding landowner opinion that toxins rendered her property valueless as "pure speculation" because she also cited recent sale for value of a similarly situated house), *and Rover Pipeline, LLC v. 10.055 Acres of Land, More or Less, in Ashland Cnty.*, No. 5:17-CV-239, 2018 WL 6833399, at *5–6 (N.D. Ohio Dec. 28, 2018) (excluding landowner testimony speculating without evidence that property will never again grow Christmas trees, despite contrary testimony of landowner's own expert).

Terry presented three bases for her opinion, two of which supported admissible testimony. First, the court incorrectly disregarded Terry's argument that her personal knowledge of her land was a basis for her opinion on damages. When explaining why the access road interfered with the best location for a house on her property, Terry explained:

> Well, the problem is, as I see it, is that that spot, that exact spot [of the access easement] was already there for [a buyer] to put a house close by, and then that is their place where they hike to and take their friends and say, "Look at this from here," you know, "Look at this. Isn't this glorious?" You can see Spring Hollow Reservoir. In the snow, it's just a dot of blue, so . . . that ability to be able to hike up and enjoy that beautiful part of the property and have the way to get to it is, you know, gone[.]

J.A. 253. This is precisely the kind of personal knowledge which justifies the presumption that landowners are qualified to testify to the value of their land. *E.g.*, *United States v. 68.94 Acres of Land, More or Less, Situate in Kent Cnty.*, 918 F.2d 389, 397 (3d Cir. 1990)

9

("The Federal Rules of Evidence generally permit landowners to give opinion evidence as to the value of their land due to the special knowledge of property which is presumed to arise out of ownership."); *see also* 5 *Nichols on Eminent Domain* § 23.03, Lexis (updated Nov. 2024) ("The owner is deemed to have sufficient knowledge of the price paid, the rents or other income received, and the possibilities of the land for use, to render an opinion as to the value of the land."). The district court should have let Terry testify on this basis.

Second, it was admissible for Terry to compare the damage caused by the access road to the damage caused by the pipeline easements in Sales One and Two. Landowners may base their valuation opinion on comparable property sales. *See 0.47 Acres of Land*, 853 F. App'x at 815 ("[Landowner's] decades of familiarity with his property enabled him to form an opinion of its value based on comparable property sales."). Terry is deeply familiar with her property—it has been in her family since the 1840s. Terry's testimony on these comparable sales was particularly salient because she explained that she knew the seller in Sale One and that he "unloaded" his property for a loss because "it had a pipeline proposed to go through it." J.A. 236, 238–39. And as we held in *9.89 Acres*, the court's conclusion that the buyer in Sales One and Two didn't have knowledge of the easements, and that the Sales were therefore unreliable, was not well-supported. *See 9.89 Acres*, No. 23-2129, slip op. at 15–17 (companion case holding that the district court abused its discretion by excluding expert's reliance on these sales).

Nonetheless, the district court found that Sales One and Two were not comparable because they were encumbered by pipeline easements, not access easements. But the comparability of sales goes to weight, not admissibility, and is a matter for the fact finder.

10

*Columbia Gas Transmission, LLC v. 76 Acres, More or Less, in Balt. & Hartford Cntys.*, 701 F. App'x 221, 229–30 (4th Cir. 2017) (holding challenge to comparability of sales did not present a "true *Daubert* challenge" to methodology, so inclusion should be affirmed); *see United States v. 320.0 Acres, More or Less, in Monroe*, 605 F.2d 762, 810 (5th Cir. 1979) ("[T]he extent to which dissimilarities are reflected in market value is a question of the evidentiary weight of the comparable sales, which is a question for the jury."). The district court's contrary approach would run smack-dab into practical issues (how comparable is comparable enough for admissibility?) and would undermine the longstanding rule that landowners are presumptively qualified to testify as to the value of their land. *See United States v. 10,031.98 Acres of Land, More or Less, Situate in Las Animas Cnty.*, 850 F.2d 634, 639–40 (10th Cir. 1988) (reversing exclusion of landowner testimony as to comparable sales, because "[i]t would totally emasculate the rule that an owner is always qualified to testify as to the value of his property to turn around and require a threshold basis for that testimony before it may be admitted"). Accordingly, the district court erred when it refused to allow Terry to testify regarding her personal knowledge of the land as well as the comparable sales.

By contrast, the district court did not abuse its discretion when it found that the 2007 expert appraisal of the conservation easement was not an admissible basis for Terry's opinion because "there is no rational basis for Terry's opinion that the conservation easement and MVP's access easement affect the property equally." *0.32 Acres of Land*, 2022 WL 4091860, at *8. A review of the record confirms that Terry's reliance on the 2007 appraisal was speculative. Terry justified basing her valuation opinion on this expert

11

appraisal because both easements "eliminat[e] some uses of the property," and therefore, she reasoned, they devalue the property at the same rate. J.A. 248. But a conservation easement over the entire property is of a different character than an access easement on part of the property, and Terry repeatedly failed to explain why those easements would devalue the property at the same rate. Consequently, the district court did not abuse its discretion by excluding this basis for Terry's testimony on the 2007 appraisal.[7]

## B.

Turning to the district court's exclusion of the Gruelle Report under Rule 702, we conclude that it applied "erroneous legal principles." *Westberry*, 178 F.3d at 261. In reaching this conclusion, we are guided by our analysis in *9.89 Acres*, which we also issue today.

As we explain in *9.89 Acres*, Federal Rule of Civil Procedure 71.1 does not change the court's standard Federal Rule of Evidence 702 analysis, which is designed to ensure that an expert's methodology is reliable. *See 9.89 Acres*, No. 23-2129, slip op. at 10, 15. Rule 702 requires courts to exclude an expert report where the expert's methodology is not based on sufficient facts or data. However, the court should not resolve contested factual issues at the admissibility stage. *9.89 Acres*, No. 23-2129, slip op. at 15; *see Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) ("Questions regarding the factual

---

[7] We previously (in an unpublished case) reserved the question of whether landowners may ever rely on expert testimony to form their lay opinion. *0.47 Acres of Land*, 853 F. App'x at 814 ("We need not determine whether landowner lay opinion testimony may ever encompass specialized or technical knowledge within the scope of Rule 702[.]"). Because Terry did not reasonably rely on the 2007 appraisal, we need not answer that question here either.

12

underpinnings of the expert witness' opinion affect the weight and credibility of the witness' assessment, not its admissibility." (cleaned up)).

Here, rather than conducting a traditional analysis under Rule 702, the court stated that "[t]he gatekeeping role of the district court is particularly pronounced in condemnation proceedings under Rule 71.1." *0.32 Acres of Land*, 2022 WL 4091860, at *4. The court therefore identified contested factual issues in the Gruelle Report, disagreed with Gruelle's view of those contested facts, and determined that these "errors and omissions" rendered the Report entirely inadmissible under the Rules of Evidence. *Id.* at *5. This was the wrong approach. "Rather, the court must first apply [the] Rules [of Evidence] to determine the universe of evidence that it will then use to 'tr[y] all issues' under Rule 71.1(h)(1)." *9.89 Acres*, No. 23-2129, slip op. at 9. Thus, the correct inquiry at the admissibility stage is more modest than the one undertaken by the district court below: it should ask only whether the expert's methodology was reliable and was based on sufficient facts or data, keeping in mind that the expert "need not be precisely informed about all details of the issues raised in order to offer an opinion." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (citation omitted).

Resisting this conclusion, MVP argues that this case is like *U.S. Equal Employment Opportunity Commission v. Freeman*, 778 F.3d 463 (4th Cir. 2015). There, we affirmed the district court's exclusion of evidence from an expert put forward by the plaintiff agency where, among "an alarming number of errors and analytical fallacies in [the expert]'s reports, . . . . the district court found a 'mind-boggling' number of errors and unexplained discrepancies in [the expert]'s database." *Id.* at 466–67. "For example, looking at a subset

13

of 41 individuals for whom the [agency was] seeking back pay, 29 had at least one error or omission. Seven were missing from the database altogether." *Id.* at 467.

This case is not like *Freeman*. In that case, the expert's errors were clear-cut and put the report "outside the range where experts might reasonably differ." *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999)). Here, by contrast, many of the purported errors were not at all obvious. Indeed, it is not even clear that the court decided the factual disputes correctly, "thus illustrating the dangers of resolving factual disputes at the evidentiary stage." *9.89 Acres*, No. 23-2129, slip op. at 15.

First, the court faulted Gruelle for failing to consider the negative impact Honeysuckle Road and the old logging road had on the Terry Parcel's pre-taking value. Yet the Gruelle Report mentions Honeysuckle Road several times. Furthermore, Terry stated in her deposition that these roads *increase* the value of her property—Honeysuckle Road because it has little traffic and provides car access to otherwise inaccessible areas, and the old logging road because it provides foot access to a scenic overlook. It is therefore not at all clear that these roads devalue her property.

Second, the court took issue with the comparability of Gruelle's pre-taking and post-taking sales. As discussed above, however, the comparability of sales is a question for the fact finder. *E.g.*, *E. Tenn. Nat. Gas Co. v. 7.74 Acres in Wythe Cnty.*, 228 F. App'x 323, 329 (4th Cir. 2007) (holding that challenge to experts' proposed comparable sales did not present a "true *Daubert* challenge" to methodology, so inclusion should be affirmed).

Third, the court found that Gruelle inappropriately considered the effect that takings on other properties would have on the view from Terry's property. It is true that, in general,

14

courts cannot consider the impact of takings of *other* properties, so Gruelle should be prevented from testifying on this basis. *See Campbell v. United States*, 266 U.S. 368, 371 (1924). However, this illegitimate consideration—contained in one sentence in a 41-page report, with no indication that it affected the rest of the reasoning—does not render the entire report unreliable and therefore inadmissible.

Finally, the court noted that Gruelle inaccurately assumed MVP's 30-foot-wide temporary easement was permanent, when in fact the permanent easement is only 20 feet wide. But, as noted above, the difference between the two easements was small—0.085 acres. And, in any event, Gruelle's analysis is entirely focused on the *use* of the access road (to carry heavy machinery to the pipeline) rather than the size of the road. So, again, it is unclear that this apparent factual error impacted his analysis.

In sum, the "errors" identified by the district court did not indicate that Gruelle's methodology was unreliable, that he did not rely on sufficient facts, or that he was not qualified as an appraiser. This is not a case where the testimony was "mere guess or speculation" based on "no evidence." *United States ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 750 (6th Cir. 2016) (quoting *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)) (affirming exclusion of "purely speculative" expert report). We vacate the exclusion of Gruelle's expert report because the district court's factual analysis reveals no fatal methodological defects under Rule 702.[8]

---

[8] Terry moved the district court to reopen discovery so that Gruelle could cure the purported defects in his report, and she asks us to reverse the district court's denial of that motion. We need not reach this question because we vacate the Gruelle Report's exclusion.

III.

For the foregoing reasons, we reverse the district court's exclusion of most of Terry's testimony as to the post-taking value of her property and vacate the district court's exclusion of the Gruelle Report. We remand this matter to the district court for further proceedings consistent with this opinion and with our decision in *9.89 Acres*.

*VACATED IN PART, REVERSED IN PART,*
*AND REMANDED*